EVANDER, J.
 

 Jessica Labance was shot in the hand during an exchange of gunfire between a Citrus County Sheriffs deputy and one Larry Robbins that occurred when deputies were attempting to execute a search warrant at Robbins’ residence. She appeals from an order dismissing the negligence count of her amended complaint with prejudice in favor of the Sheriff of Citrus County, Jeffrey J. Dawsy.
 
 [1]
 
 We find that the trial court erred in concluding that the Sheriff did not owe a legal duty to Labance.
 

 We review
 
 de novo
 
 the dismissal of a complaint for failure to state a cause of action.
 
 Wallace v. Dean,
 
 3 So.3d 1035, 1045 (Fla.2009). To determine whether the amended complaint should have been dismissed, we must treat Labance’s well-pled allegations as true.
 
 City of Pinellas Park v. Brown,
 
 604 So.2d 1222, 1224 (Fla.1992). The recitation of the facts herein come entirely from the amended complaint.
 

 The Citrus County Sheriffs Office obtained a search warrant on May 23, 2003, for Robbins’ residence after several narcotics buys were made there by a confidential informant. The warrant was not executed until May 30, 2003. On that date, the Sheriffs deputies arrived at the residence at approximately 6:00 a.m. The deputies observed that there were four to five motor vehicles present at the residence— more than the two vehicles they had expected. Robbins had an extensive criminal history, including charges for aggravated assault and carrying a concealed weapon. At least one of the deputies had knowledge that Robbins routinely carried a firearm.
 

 Labance did not know Robbins and was not the subject of the search warrant. She had arrived at the residence to pick up her mother who was babysitting the two minor children living at the residence. A plain-clothed deputy knocked on the door and, after Robbins opened the door, an exchange of gunfire transpired between Robbins and one of the deputies. Labance was sitting on a couch when she was struck in the hand by a bullet from the deputy’s gun.
 

 In her amended complaint, La-bance alleged that the Sheriff, by and through his deputies, had a duty to exercise reasonable care for her safety. She alleged generally that the deputies had breached that duty of care by,
 
 inter alia,
 
 failing to warn her of, and/or protect her from, the dangerous conditions created during the execution of the warrant. The
 
 *1259
 
 trial court concluded that because the enforcement of a facially sufficient and validly issued warrant is a duty owed to the general public and not to any individual person,
 
 see, e.g., Willingham v. City of Orlando,
 
 929 So.2d 43, 50 (Fla. 5th DCA 2006), the Sheriff did not have a legal duty to protect Labance from harm during the execution of the warrant. We respectfully disagree with the trial court’s analysis.
 

 When addressing the issue of governmental liability under Florida law, a court must first determine whether the governmental entity owed a duty of care to the plaintiff.
 
 Wallace,
 
 3 So.3d at 1044. If no duty of care is owed with respect to the alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign shall be immune from suit does not need to be reached.
 
 Id.
 
 However, if a duty of care is owed, it must then be determined whether sovereign immunity bars any action for an alleged breach of duty.
 
 Id.
 

 A law enforcement officer’s duty to enforce the law and protect the public safety is generally considered a matter of governance for which there has never been a common-law duty of care.
 
 Trianon Park Condo. Ass’n, Inc. v. City of Hialeah,
 
 468 So.2d 912, 919 (Fla.1985). Thus, there is no governmental liability where an officer exercises his discretion not to make an arrest.
 
 See, e.g., Everton v. Willard,
 
 468 So.2d 936 (Fla.1985). However, when an officer acts to enforce the law, Florida law has consistently recognized that a special relationship may arise between an officer and a tort victim when the officer’s conduct creates a foreseeable zone of risk to a determinate individual or group.
 
 See Pinellas Park,
 
 604 So.2d at 1226 (officers conducting high-speed chase of motorist who ran red light had duty to reasonably safeguard surrounding motorists);
 
 Kaisner v. Kolb,
 
 543 So.2d 732, 734 (Fla.1989) (officer who detained motorist pursuant to traffic stop had duty to reasonably safeguard motorist’s well-being);
 
 Brown v. Miami-Dade County,
 
 837 So.2d 414, 417-18 (Fla. 3d DCA 2001) (when conducting sting operation in hotel, police had duty to reasonably protect safety of innocent bystanders);
 
 City of Miami v. De La Cruz,
 
 784 So.2d 475, 478 (Fla. 3d DCA 2001) (when giving chase to criminal suspect in midst of crowded street festival, police had duty to reasonably safeguard surrounding revelers). Here, Labance adequately alleged the existence of a special relationship based upon the deputies’ creation of a foreseeable zone of risk to the occupants of Robbins’ residence at the time of the execution of the search warrant.
 

 The Sheriff contends that even if he owed a duty to Labance, he was entitled to sovereign immunity because the decision of how to execute a duly issued search warrant is “discretionary” and should not be the subject of tort litigation. This argument was not ruled upon by the trial court and, given the vagueness of Labance’s amended complaint, cannot be fully addressed by this court.
 
 [2]
 

 The sovereign immunity doctrine is based upon the separation-of-powers
 
 *1260
 
 provision present in Article II, section 3 of the Florida Constitution.
 
 Wallace,
 
 3 So.3d at 1053. The separation-of-powers doctrine necessitates that certain policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability.
 
 Id.
 
 The Florida Supreme Court has rejected the definitional approach to “discretion,” observing that all government functions, no matter how seemingly ministerial, can be characterized as embracing some degree of discretion.
 
 Id.
 
 Rather, the focus is on whether the challenged act involves the exercise of a planning level function or the exercise of an operational level function. Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy.
 
 Id.
 
 Only the former entitles the governmental entity to immunity for its alleged negligent actions.
 

 To assist in the determination of whether a challenged act involves the exercise of a planning function, the Florida Supreme Court has adopted a group of four related questions: (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective, as opposed to one that would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority to do or make the challenged act, omission, or decision?
 
 Commercial Carrier Corp. v. Indian River County,
 
 371 So.2d 1010, 1019 (Fla.1979). If all of these preliminary questions can be answered in the affirmative, then the governmental entity is immune from liability. If one or more questions call for a negative answer, then further inquiry is necessary, depending upon the facts and circumstances involved.
 
 Id.
 

 In the instant case, we are unable to apply this four-question test because the amended complaint is remarkably devoid of specific factual allegations necessary to support Labance’s conclusionary assertions of negligence. For example, La-bance alleges that the deputies failed to warn her of the dangerous circumstances surrounding the execution of the warrant, yet fails to assert any facts which would support a finding that the deputies had the opportunity to give her warning. La-bance’s general assertions that the Sheriff breached his duty of care by “failing to use reasonable care,” “creating a dangerous condition on the premises,” “negligent use of a firearm,” “negligent use of deadly force” and “negligent execution of a search warrant” are similarly unsupported by specific factual allegations.
 

 Although Labance’s amended complaint adequately alleged the existence of a legal duty on the part of the Sheriff, it was woefully inadequate in alleging ultimate facts to support Labance’s claim for relief.
 
 See
 
 Fla. R. Civ. P. 1.110(b);
 
 [3]
 

 see also Pratus v. City of Naples,
 
 807 So.2d 795, 796-97 (Fla. 2d DCA 2002). Based on the inadequacy of the amended complaint, we are unable to determine whether Labance would be able to allege a cause of action that would survive a motion to dismiss based on sovereign immunity.
 

 
 *1261
 
 As previously noted, the trial court granted the order of dismissal based on its erroneous conclusion that Labance would be unable to allege the existence of a legal duty — not on the failure to allege sufficient ultimate facts. Accordingly, on remand, the trial court shall afford Labance the opportunity to file a second amended complaint.
 

 REVERSED and REMANDED.
 

 ORFINGER and COHEN, JJ., concur.
 

 [1]
 

 . Labance filed a notice of voluntary dismissal as to the remaining count of her amended complaint.
 

 [2]
 

 . While there appears to be no Florida cases that directly address the issue of whether a law enforcement entity is entitled to immunity for decisions made regarding the time and manner of execution of a search warrant, we can envision circumstances in which application of the sovereign immunity doctrine would be inappropriate. As observed in
 
 Pinellas Park,
 
 there can be circumstances in which an officer engages in flagrantly dangerous conduct that goes far beyond what is necessary to vindicate the law and such conduct cannot be honestly characterized as "policy” or "planning.”
 
 Pinellas Park,
 
 604 So.2d at 1226.
 

 [3]
 

 . This rule provides, in part:
 

 A pleading which sets forth a claim for relief ... must state a cause of action and shall contain ... a short and plain statement of the ultimate facts showing that the pleader is entitled to relief....