# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2023-0308
LT Case No. 2018-CA-000404

———————————————

CITY NATIONAL BANK OF
FLORIDA as Trustee of Land
Trust No. 2400-9492-00,

    Appellant/Cross-Appellee,

    v.

SIGNATURE LAND, INC., a Florida
Corporation and EDWARDS
CREEK SIGNATURE, LLC, a
Florida Limited Liability
Company,

    Appellees/Cross-Appellants.

———————————————

On appeal from the Circuit Court for Duval County.
Michael S. Sharrit, Judge.

Elliot H. Scherker, and Bethany J.M. Pandher, of Greenberg
Traurig, P.A., Miami, and Michael E. Lockamy, of Bedell,
Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, for
Appellant/Cross-Appellee.

Jeffrey C. Regan, of Regan Atwood P.A., Jacksonville, and
Charles R. Walker, Jr., of Bloodworth, Flick & Walker, Orlando,
for Appellees/Cross-Appellants.

October 25, 2024

EISNAUGLE, J.

City National Bank of Florida, as Trustee of Land Trust No. 2400-9492-00 ("Appellant"), appeals the trial court's final judgment in favor of Signature Land, Inc., and Edwards Creek Signature, LLC ("Appellees"), rendered after a jury verdict, finding Appellant liable for unjust enrichment and awarding damages. Appellant argues that the trial court erred in denying its motion for directed verdict. We agree and reverse as to liability.

In 2013, the parties entered into a contract providing that Appellees would purchase, and Appellant would sell, 364 acres in Lake County, Florida. This 2013 contract was negotiated between Stephen Leggett, the owner of Signature Land, Inc., and Don Ruckman on behalf of the Trust. Leggett knew that any proposal made to Ruckman would need to be approved by the Trust beneficiaries. Although the Trust beneficiaries approved this 2013 contract, the sale did not close because Leggett was unable to secure an investor.

Undeterred, Leggett approached Ruckman again in 2014 with a second proposal to purchase the property. But Leggett was, at least initially, once again unable to secure an investor—an important factor in the negotiations. To obtain an investor, Leggett believed he would need to rezone the property. But time was in short supply. Leggett believed the city council's decision to rezone the property could be a close call, so he needed to get approval before a key city council member left office.

The problem was, at that point, Leggett had no contract to purchase the property, and he could not submit an application for rezoning without a contract. To get the rezoning process moving, Leggett asked Ruckman to sign the application.

The rezoning was eventually approved, and as Leggett expected, that decision was appealed. Now Ruckman's signature on the application was not enough—Leggett needed a contract to have standing to defend the appeal. Leggett offered terms in an attempt to reach an agreement to purchase the property, but the negotiations ultimately failed, and the Trust stepped in to defend the appeal.

2

Importantly, the evidence is undisputed that Leggett knew that he did not have a contract for the purchase of the property when he decided to pursue rezoning. Leggett knew he needed the approval of the Trust beneficiaries to have a binding contract, and he testified that he had no memory of Ruckman ever promising him the beneficiaries would approve the terms he offered.

Not having a contract, Appellees filed suit alleging that Appellant was unjustly enriched by Appellees' efforts, at substantial expense, to rezone the property. At trial, Appellant moved for a directed verdict, arguing inter alia that the undisputed evidence established that Leggett was an "officious intermeddler," and that Appellant was not unjustly enriched because Leggett knowingly acted without a contract for his own benefit.

The trial court denied the motion based on evidence that Appellants had knowledge of, and voluntarily accepted, the benefit of the rezoning. The jury later returned a verdict in favor of Appellees, and this appeal follows.

## II.

We review a trial court's denial of a motion for directed verdict de novo. *Universal Prop. & Cas. Ins. Co. v. Motie*, 335 So. 3d 205, 206 (Fla. 5th DCA 2022).

In the absence of an enforceable express or implied-in-fact contract, a party may recover under a quasi-contract claim—like unjust enrichment. *See Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010) (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007)); *see also Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386–87 (Fla. 4th DCA 1997) (en banc). Unjust enrichment "is an obligation created by the law to remedy the unjust retention of a benefit conferred by another." *Baron*, 39 So. 3d at 451. The elements of unjust enrichment are: "1) the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit, 2) the defendant accepts and retains the conferred benefit, and 3) under the circumstances it would be inequitable for the defendant to retain

3

the benefit without paying for it." *Duncan v. Kasim, Inc.*, 810 So. 2d 968, 971 (Fla. 5th DCA 2002).

Importantly, however, absent certain specific circumstances justifying the intervention, "[t]here is no liability in restitution for an unrequested benefit voluntarily conferred[.]" Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011); *see also* 11 Fla. Jur. 2d Contracts § 289 (2d ed. & Aug. 2024 update). In other words, there is no liability "to a claimant characterized as 'officious,' an 'intermeddler,' or a 'volunteer.'" Restatement (Third) of Restitution and Unjust Enrichment § 2. A benefit can be voluntarily conferred, for instance, when a party conveys a benefit during contract negotiations "in the hope (or the reasonable expectation) of a future contract between them." *Id.* § 30.

As the Restatement (Third) explains, while "it may be possible to recover the value of a 'precontractual' performance on the basis of implied contract . . . or promissory estoppel,"

> a recovery based on the recipient's promise is fundamentally different from a recovery based on the recipient's unjust enrichment. If benefits were conferred before a promise of counter-performance had been obtained, in the context of a prospective exchange that the recipient was still free to reject, the result is a form of *uncompensated enrichment that is neither unjust nor unjustified*. Precontractual performance in such a case rests on a self-interested calculation by which the anticipated reward to the performing party is the enhanced likelihood of a future return.

*Id.* (emphasis added).

The officious intermeddler doctrine is not a novel concept in Florida law. In *Tipper v. Great Lakes Chemical Co.*, 281 So. 2d 10 (Fla. 1973), the plaintiff employed his expertise, without request from or knowledge of the benefit's recipient, to help mitigate a dangerous gas leak in the dark of night. *Id.* at 11–12. On these facts, while the plaintiff may have voluntarily conferred a benefit without the promise of counter-performance, our supreme court held that the plaintiff was not an officious intermeddler—

4

expressly applying an exception to the rule. *Id.* at 14 (concluding the plaintiff "is entitled to more, under Florida law, than a pat on the back and the label: 'Admirable Volunteer.'").

Since that time, courts applying Florida law have recognized that *Tipper* approved the Restatement's officious intermeddler doctrine. *See Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, 501 F. App'x 879, 882 (11th Cir. 2012) (recognizing that *Tipper* adopted the Restatement's "officious intermeddler" doctrine and applying the rule even where the defendant accepted the benefit conferred); *Hermanowski v. Naranja Lakes Condo. No. Five, Inc.*, 421 So. 2d 558, 560 (Fla. 3d DCA 1982) (recognizing that *Tipper* "approved the Restatement of Restitution § 112" and applying the officious intermeddler doctrine).

III.

Here, Appellees cannot recover on a claim of unjust enrichment because they were officious intermeddlers. First, Leggett's precontractual performance was unrequested and "conferred before a promise of counter-performance." Leggett knew he did not have a binding contract when he chose to pursue rezoning.

Second, the effort was a "self-interested calculation." Indeed, Leggett pursued rezoning to attract an investor (an important factor in the contract negotiations) and a council member, who was a key vote in favor of rezoning, was about to retire.

Based on the undisputed facts, the benefit conveyed in this case "is a form of uncompensated enrichment that is neither unjust nor unjustified." Restatement (Third) of Restitution and Unjust Enrichment § 30. Stated another way, it is not "inequitable for the [Appellants] to retain the [rezoning] benefit without paying for it." *Duncan*, 810 So. 2d at 971.

The evidence having failed to establish a claim for unjust enrichment, the trial court should have granted Appellant's motion for directed verdict.

REVERSED and REMANDED.

5

MACIVER, J., concurs.

HARRIS, J., concurs in result only.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____